OPINION OF THE COURT
Kane, J.
The standards and procedures for court-authorized eavesdropping in New York State are set forth in CPL article 700. The authority for a State Legislature to enact such legislation is found in title 3 of the Omnibus Crime Control and Safe Streets *35 Act of 1968 (18 USC § 2516 [2]), which provides that electronic eavesdropping is permissible “when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses” (emphasis supplied).
The issue on this appeal is whether court-ordered eavesdropping for evidence of forgery, larceny and related crimes listed as “Designated offenses” in CPL 700.05 (8) is within the umbrella of the Federal act as “other crime dangerous to life, limb, or property” (18 USC § 2516 [2]).
The Appellate Division, in a consolidated appeal, affirmed orders of Criminal Term, which granted motions to suppress evidence so obtained and dismissed counts of indictments founded upon such evidence. For the reasons hereinafter set forth, we reverse the orders of the Appellate Division and reinstate those counts of the indictments.
Initially, we note that on this appeal by the People, we are concerned with only 7 of an original 11 defendants. The seven are charged in various counts of separate indictments with the crimes of forgery, criminal possession of a forged instrument, criminal possession of stolen property, offering a false instrument for filing, issuing a false certificate, attempted tampering with public records, tampering with public records and conspiracy. These accusations arose out of the investigation of an organized criminal network which had operated for some 10 years at the 125th Street Auto School in the City of New York. Through allegedly corrupt employees of the New York State Department of Motor Vehicles (DMV), defendant Jarret Weinrich was able to process applications for duplicate certificates of title and thus provide an avenue for the disposal of vehicles stolen by other members of the criminal network. In addition, Weinrich, as proprietor of the 125th Street Auto School, offered such “related” services as driver’s licenses without road tests and inspection stickers without inspections.
An investigation began in June 1981, when documents in the possession of the automobile crime division of the New York City Police Department revealed that a stolen vehicle identification number (VIN) from a 1978 Audi owned by a Manuel R. Martin had been installed on another 1978 Audi registered in *36 the name of Barbara Phillips. The transfer of title to Phillips was accomplished by the forgery of Martin’s name on a duplicate certificate of title. A close examination of the Phillips vehicle and its manufacturer’s confidential VIN disclosed that it had been stolen from a third party in the New York City area. Additional inquiry disclosed that the Phillips duplicate title application was one of a number of such requests for late model vehicles made through the 125th Street Auto School. Shortly thereafter, one Daniel Scott was found to be in possession of an automobile with an unauthorized VIN and was arrested for criminal possession of stolen property in the first degree. He agreed to assist the police in their continuing investigation and subsequently implicated others who were involved in the actual theft of vehicles and the sale of VINs to Weinrich.
This information provided the foundation for an eavesdropping warrant to intercept oral communications at the 125th Street Auto School for evidence of the crimes of grand larceny, criminal possession of stolen property, forgery, falsifying business records, offering a false instrument for filing and other related crimes, including conspiracy to commit such crimes. Information obtained by electronic surveillance, in accordance with the provisions of the warrant and court-authorized extensions thereof, provided much of the evidence upon which the Grand Jury relied in returning subsequent indictments. The recorded conversations corroborated information furnished by Scott and provided further evidence of theft of motor vehicles, illegal transfers of VINs, altered documents and forged certificates implicating Weinrich and his associates, Tom Velez, Michael Cerrato and Anthony Mazzucca, together with three employees of the DMV, Maria Gruezo, Patty Bell and Lillian Hayes, who, for a consideration, actively participated in the enterprise by entering verifying information into the DMV computer to accommodate forged certificates of title provided by Weinrich.[1]
Although conceding that the eavesdropping orders were authorized by State law (CPL 700.05), defendants contend that the Legislature exceeded the permissible scope of State regulation as defined by title 3 of the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC § 2516 [2]) in authorizing electronic surveillance to investigate the criminal activities found here. Criminal Term agreed and ordered suppression of the evidence *37 obtained by court-ordered electronic surveillance and dismissed the indictments founded thereon. The Appellate Division affirmed for the reasons set forth in the memorandum of the suppression court, which held that the crimes designated in the eavesdropping warrant were not crimes for which such a warrant may be lawfully obtained since they are not specifically designated in 18 USC § 2516 or includable therein as “other crime dangerous to life, limb, or property” (18 USC § 2516 [2]). In its decision, the Appellate Division relied heavily on this court’s opinion in People v Shapiro (50 NY2d 747), wherein it was held that the crimes of sexual abuse and promotion of prostitution involving children and minors are not proper subjects for court-ordered electronic surveillance since “they cannot be said to be ‘crime[s] dangerous to life [or] limb’ ” (People v Shapiro, supra, p 764).
The matter before us is clearly distinguishable from the isolated circumstances found in Shapiro. There, the criminal conduct involved only consensual conduct, absent any use of force and of the nature and type which, apparently, the Congress expressly intended to exclude (Sen Rep No. 1097, 90th Cong, 2d Sess, 1968, US Code Cong & Admin News, at 2187).[2]
This record demonstrates the presence of an established and pervasive criminal operation involving the corrupt activities of public employees who furnished necessary documents, authentication, information and assistance in order to promote and sustain the illegal enterprise. Defendants’ scheme to circumvent the regulations which establish the requirements for valid operator’s licenses and vehicle inspections certainly endangers people and property. Such practices place upon the highways operators and vehicles prohibited by those very regulations which were promulgated to protect the general public. Moreover, the stealing of VINs and the forging of documents directly endangers property by concealing and facilitating the theft of motor vehicles. This view finds support in the United States Senate instruction that “[t]he term ‘property’ * * * is not to be read restrictively” (see, Sen Rep No. 1097, 90th Cong, 2d Sess, 1968, US Code Cong & Admin News, at 2187; see also, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 700.05, p 464).
*38 Additionally, it is logical to conclude that in the use of the singular in the “catch all” phrase “or other crime dangerous to life, limb, or property” (18 USC § 2516 [2]), Congress intended the word “crime” to be construed genetically and did not seek to unreasonably limit the power of a State Legislature to enact enabling legislation. Finally, we note that the activities described are within the permissible scope of electronic eavesdropping since they portray a well-organized criminal enterprise representing major offenses that are “ ‘intrinsically serious or * * * [are] characteristic of the operations of organized crime’ [Sen Rep No. 1097, 90th Cong, 2d Sess, 1968, US Code Cong & Admin News, at 2234]” (People v Shapiro, supra, p 764).
The orders insofar as appealed from should be reversed and the indictments reinstated.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons and Kaye concur; Judge Alexander taking no part.
Orders insofar as appealed from reversed, etc.

. The above-named persons are the seven defendants mentioned previously and that part of the orders appealed from which dismissed the indictments against four others are not before us for review.

. In describing the requirement that crimes designated in a State statute would have to be “dangerous to life, limb, or property, and punishable by imprisonment for more than one year”, the Senate report stated, “This limitation is intended to exclude such offenses as fornication and adultery, which do not involve danger to life, limb, or property” (Sen Rep No. 1097, 90th Cong, 2d Sess, 1968, US Code Cong & Admin News, at 2187).